IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 22, 2010

**DARRELL WAYNE BUMPAS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3154      Cheryl Blackburn, Judge**

_____

**No. M2010-00222-CCA-R3-PC - Filed December 14, 2010**

_____

The Petitioner, Darrell Wayne Bumpas, pled guilty to robbery and resisting arrest, and the trial court sentenced him as a Range II offender to six years in the Tennessee Department of Correction. The Petitioner filed a petition for post-conviction relief, alleging that his guilty plea was unknowing and involuntary and that he received the ineffective assistance of counsel. After a hearing, the post-conviction court dismissed the petition, and the Petitioner now appeals. After a thorough review of the record and applicable authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

James O. Martin, III, Nashville, Tennessee, for the Appellant, Darrell Wayne Bumpas.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Jeff Burks, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A.  Guilty Plea Hearing**

This case arises from the Defendant's striking the victim and taking the victim's cell phone on August 12, 2007. When police subsequently attempted to arrest the Defendant, he resisted arrest. For these actions, a grand jury indicted the Defendant for one count of robbery, three counts of assault, one count of tampering with evidence, one count of resisting

arrest, and one count of evading arrest. The Defendant pled guilty to one count of robbery and one count of resisting arrest. At the hearing to enter his guilty plea, the State told the court that, had this case gone to trial, the evidence would have proven, in part:

> [O]n 12, August, 2007, this defendant . . . identified by Joshua Branch as having struck him and t[aken] his cell phone. The further proof was really what the Court heard in the suppression hearing that an effort was made to arrest him and he resisted that arrest in the apartment. And the Court heard about the struggle as it was in . . . the apartment room.
>
> The initial assault and taking that we submit would constitute the robbery occurred near . . . 12th Avenue South, which is here in Davidson County.

The Defendant acknowledged that the facts were as the District Attorney said. The trial court explained the proposed guilty pleas and proposed sentence to the Petitioner, and the Petitioner said he understood his guilty pleas and sentence. The trial court explained all the counts the Petitioner faced and their potential sentences and fines. The Petitioner said that his attorney had previously explained the same to him. The Petitioner agreed that he was present at a recent suppression hearing where he heard the testimony of the police officers involved in his arrest. The Petitioner, who said he had completed the eleventh grade, testified that he and his attorney went over his guilty plea together.

The trial court asked the Petitioner whether he was on any medication at the time of the hearing, and the Petitioner said he was not. He said he was supposed to be taking Doxepin "for depression" but was not taking it at the time of the hearing. He testified that being without Doxepin did not affect his ability to understand what he was doing and that he understood that he was pleading guilty. The trial court then accepted the Petitioner's guilty plea to robbery and resisting arrest and sentenced him as a Range II offender to six years in the Tennessee Department of Correction. Seventeen days after the Petitioner entered his plea and was sentenced, he filed a motion to withdraw his guilty plea, and the trial court denied this motion after a hearing.

### B. Post-Conviction Hearing

The Petitioner, who had completed the incarcerative portion of his sentence and was on probation at the time, filed a petition for post-conviction relief in which he alleged that his guilty pleas were not knowingly and voluntarily entered and that he received the ineffective assistance of counsel. A probation violation warrant was issued, and the Petitioner's probation was subsequently revoked. A hearing on the Petitioner's petition for

post-conviction relief was then held, at which the following evidence was presented: The Petitioner testified that, after pleading guilty in this case, he was sentenced to six years, one year of which was to be served in prison and the remainder of the sentence to be served on probation. The Petitioner said his counsel for the plea ("Counsel") never explained the charges to him, explaining only the State's offer for a plea agreement. The Petitioner said that, during the time between his arrest and his plea, he never discussed with anyone his "medical condition." He explained that he went to "sick call" between sixty and seventy times and filled out paperwork each time but that the jail psychiatrist never sent him to the hospital or gave him the medicine he needed. The Petitioner said, before this, he had been taking "psychotropic drugs," namely Doxepin, for between fifteen and sixteen years. The doctor in the jail, however, refused to prescribe him this medication.

The Petitioner said he never told Counsel that he had a prescription for Doxepin, and Counsel never asked him if he took any medication. The Petitioner said he had not been taking his medication for six months when he entered his guilty plea. This, he said, affected his ability to answer questions in a timely fashion because his brain would "lock," making him unable to think properly. Further, the absence of the medication made him feel nauseous and suffer insomnia and anxiety. The Petitioner said, since being released, he goes to physical therapy twice a week and suffers from brain damage from the injuries "that occurred."

The Petitioner said he pled guilty only because he was in a "bad situation" in that he was not getting his medication and he was in chronic pain. Further, the Petitioner said, Counsel kept telling him he could receive a thirty-year prison sentence if he went to trial, which "scared" him. He testified that Counsel "scared" him into pleading guilty. The Petitioner said Counsel never discussed with him defenses or a trial strategy.

On cross-examination, the Petitioner testified that he never gave Counsel his version of the events that led to his arrest in this case. The Petitioner agreed that Counsel represented him during the preliminary hearing and that Counsel visited him in jail, but he maintained that the two only discussed the State's offer for a plea agreement and never discussed that he did not commit these offenses. The Petitioner agreed that he had a criminal record and that Counsel reviewed with him the State's motion for an enhanced sentence. About his record, however, he said many of the offenses occurred more than ten years ago. The Petitioner agreed that he understood that Counsel explained that his prior convictions could result in his sentence being enhanced.

The Petitioner agreed that, on the day he pled guilty, he told the trial court that he was supposed to be taking Doxepin. He agreed the trial court asked him if the absence of this medication affected his ability to understand what he was doing, and he responded, "Not that

I can think of, no." At the plea hearing, the trial court then asked him if he was having trouble understanding what he was doing, and the Petitioner responded, "No." The Petitioner said he did not recall saying this to the trial court, blaming the lack of medication for his memory loss. The Petitioner testified, "I guess I thought [at the time of the hearing] I understood what I was doing."

The Petitioner agreed he was present at the motion to suppress where the officers testified about the facts against him. He said, however, the female victim who testified against him was a "drunk" who got mad when someone would not give her something she wanted, which was why she testified in the manner she did. He denied ever hitting her, saying he was not raised "that way."

The Petitioner said, at the time of his plea, he was not able to make a clear decision because he was unable to think straight. He said he was unable to concentrate because of the lack of medication. Further, he was still suffering the injuries he received from his altercation with police. The Petitioner testified that this altercation caused him brain damage, resulted in his teeth being knocked out and his ear drum being "busted." The Petitioner stated he received no medical attention for these injuries.

The Petitioner's trial counsel testified he represented the Petitioner beginning the day of or the day before the Petitioner's preliminary hearing in this case. He met with the Petitioner before the preliminary hearing, and, during the hearing, he cross-examined the victim. After this, Counsel requested discovery from the State, and he was eventually satisfied with the State's response to his request. Counsel provided the Petitioner with a copy of the discovery as soon as he received it and met with him a number of times. After examining his log, Counsel testified that he had a total of nineteen contacts, including letter and telephone calls, with the Petitioner.

Counsel recalled that he also gave the Petitioner a copy of the transcript from the preliminary hearing, on which the Petitioner wrote questions the Petitioner wanted Counsel to ask the witnesses at trial. Counsel opined that the Petitioner was fully aware of the facts and factual issues surrounding the charges against him. Counsel explained that Counts 1 and 2 against the Petitioner, for robbery and assault respectively, related to the crime he committed against a citizen, and Counts 3 through 7 related to his interactions with the police. Counsel recalled that six police officer witnesses placed the Petitioner near the scene of the crime and that those officers were present during the Petitioner's subsequent encounters with the police. Counsel discussed with the Petitioner the charged offenses and the implications of being convicted of each charged offense.

Counsel testified that he had the State's notice to enhance the Petitioner's sentence

and was also independently aware of the Petitioner's criminal history. The Petitioner expressed to Counsel questions about the accuracy of the State's notice, and Counsel attempted to verify the Petitioner's previous convictions.

Counsel said he filed a motion to suppress evidence against the Petitioner, and he discussed with the Petitioner the consequences of the trial court's ruling on that motion, namely that it only addressed the tampering with evidence charge the Petitioner faced and not the other six charges. Two of the police officers present at the time the Petitioner was taken into custody testified at the hearing on this motion, and Counsel cross-examined both of them.

Counsel testified that a number of discussions about settling the Petitioner's case occured, and he described the Petitioner as "actively involved" in these discussions. He conveyed offers to the Petitioner via email, and the Petitioner denied these offers. Counsel recalled nine or ten different plea bargaining scenarios that he and the Petitioner and the State discussed. Counsel said that, once the parties reached a resolution in this case, he prepared the plea petition and reviewed it thoroughly with the Petitioner four days before the Petitioner entered his guilty plea. Counsel said he himself signed the guilty plea petition on the day they reviewed it together, and the Petitioner signed it on the day he entered his guilty plea.

Counsel described the Petitioner as "very literate" and said he felt the Petitioner was "very well informed" about and "very involved" in his case. Counsel said he was not aware that the Petitioner needed medication, and he saw nothing in the Petitioner's behavior that indicated as much. During Counsel's initial interview with the Petitioner, the Petitioner denied having any mental health difficulties. Counsel said he never recalled the Petitioner saying that he needed any medication, and the first Counsel heard of this was the day of the guilty plea hearing. After the hearing, the Petitioner called Counsel and told him that he wanted to withdraw his guilty plea. Counsel sent a letter to the Petitioner explaining the procedures for withdrawing his plea and asking the Petitioner for facts to support this withdrawal. Because he did not receive a response from the Petitioner, Counsel filed a petition to withdraw the plea, which the trial court denied.

On cross-examination, Counsel testified that he sent to the Petitioner copies of the pattern jury instructions on both robbery and tampering with evidence. Counsel explained that he did not discuss any possible medications the Petitioner was taking or should have been taking because he had no reason to believe the Petitioner had mental health problems. The Petitioner told Counsel that, before being arrested, he worked as a landscaper. He did not disclose that he was on disability, which would have given Counsel a reason to inquire further into the Petitioner's mental health. Counsel recalled that the Petitioner asked him for numerous documents, including: colored copies of all of his mug shots from his previous

arrests, his entire record, hospital records on all of the victims, copies of the criminal records of all of the witnesses, copies of all of the warrants, and everything included in the Petitioner's file kept by Counsel. Counsel agreed that this may be a sign that the Petitioner was suffering from agitation or anxiousness.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

### A. Ineffective Assistance of Counsel

The Petitioner argues that Counsel was ineffective for advising the Defendant to plead guilty despite knowing the Defendant was not taking his medication. The State responds that the evidence support the post-conviction court's findings that Counsel's representation was not ineffective.

When it dismissed the Petitioner's petition for post-conviction relief, the post-conviction court found:

> Petitioner did not present any clear and convincing evidence at his evidentiary hearing to support his claims [that his guilty plea was not entered knowingly and voluntarily]. Petitioner's testimony consisted of blanket statements that trial counsel never discussed the facts of his case and that he was not sure why he pled because "everything was a blur." His testimony contradicted itself as to whether he took mental health medications while at the jail and when asked if the Court inquired about medication during the plea colloquy, Petitioner testified that he could not recall. Petitioner provided nonresponsive answers to many of the questions posed to him during the hearing.

> Trial counsel, however, testified that he did explain the elements of the charges to Petitioner and that they discussed the facts of his case, his likelihood of convictions, and the effect of his prior criminal history. Trial counsel also stated that Petitioner frequently requested copies of documents in his case and that these documents were supplied to him when possible. The Court finds trial counsel's testimony to be credible. Additionally, Petitioner was able to hear the testimony against him at his preliminary hearing as well as at his suppression hearing held a few weeks prior to Petitioner's scheduled trial date.

Furthermore, the transcript of Petitioner's guilty plea hearing belies his claims. . . .

During his evidentiary hearing, Petitioner presented no evidence that would contradict the information he provided to the Court at his plea hearing. Petitioner has not demonstrated by clear and convincing evidence that his trial counsel was ineffective in explaining his case to him or ineffective by not seeking a mental health evaluation nor has Petitioner demonstrated that he was prejudiced by any alleged deficiency. Petitioner's request for post-conviction relief is, therefore, denied.

Additionally, the court notes that the Notice of Enhanced Punishment and Impeachment, admitted as Exhibit 1 to the hearing, shows Petitioner has a lengthy criminal history and is not new to the criminal justice process.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State,* 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State,* 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth

Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.  Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases.  *Baxter*, 523 S.W.2d at 936.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances.  *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988).  The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).  In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Burns*, 6 S.W.3d at 462.  Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).  In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'"  *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).  Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).  The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation.  *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).  However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.  *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard,

then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to present evidence that he likely would have fared better at trial than he fared by pleading guilty, although such evidence may also demonstrate that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

In the case under submission, we conclude that the Petitioner has not proven by clear and convincing evidence that Counsel's performance was deficient or that his guilty plea was not knowingly and voluntarily entered. With regard to Counsel's performance, the post-conviction court found that Counsel credibly testified that the Petitioner did not disclose to Counsel any mental health issues or his need for medication. Further, Counsel did not observe any behavior by the Petitioner that caused Counsel to doubt the Petitioner's ability to understand the implications of his guilty plea. To the contrary, he found the Petitioner to be involved and engaged in his own defense. Counsel first learned of the Petitioner's need for medication during the guilty plea hearing when the Petitioner disclosed to the trial court that he had been prescribed Doxepin. The trial court then made multiple inquiries, which satisfied the judge that the Petitioner understood the implications of pleading guilty despite being off his depression medication. We agree with the post-conviction court that Counsel's failure to request that the guilty plea proceeding be halted in order to have the Petitioner's mental health evaluated did not constitute deficient performance.

## B. Voluntariness of Guilty Plea

The Petitioner contends he is entitled to post-conviction relief because his guilty pleas were not knowingly and voluntarily entered. He argues that, because he was unable to take

his depression medication, Doxepin, during the six months leading up to his plea submission hearing, he did not knowingly and voluntarily plead guilty. The State counters that, because the Petitioner did not present expert testimony about the effects of Doxepin, he failed to prove by clear and convincing evidence that his guilty plea was unknowingly and involuntarily entered. The State cites three cases to support its argument: *State v. Jimmy Ray Culberson*, No. M2005-01860-CCA-R3-PC, 2006 WL 2956504, at *4 (Tenn. Crim. App., at Nashville, Oct. 12, 2006), *no Tenn. R. App. P. 11 application filed*; *Bobby Rayle v. State*, No. E2006-01366-CCA-R3-PC, 2007 WL 1966021, at *4 (Tenn. Crim. App., at Knoxville, July 9, 2007), *perm. app. denied* (Tenn. Oct. 15, 2007); and *Ivan Moreno a/k/a Fernando Fileto a/k/a Roberto Lepe-Cervantes v. State*, No. M2009-00393-CCA-R3-PC, 2010 WL 2483473, at *6 (Tenn. Crim. App., at Nashville, June 21, 2010), *no. Tenn. R. App. P. 11 application filed*.

We conclude that the Petitioner has not proven that his guilty plea was not knowingly and voluntarily entered. As the State pointed out in its brief, this Court has, on multiple occasions, held that a petitioner's bare allegations, unsupported by medical testimony, about the use of psychiatric drugs was insufficient to support a claim that his guilty plea was not knowingly and voluntarily entered. *See Culberson*, 2006 WL 2956504, at *4; *Rayle*, 2007 WL 1966021, at *4; *Moreno*, 2010 WL 2483473, at *6. In this case, the Petitioner's bare allegations that, due to being unmedicated, his guilty plea proceedings were a "blur" and that he suffered insomnia and anxiety do not constitute clear and convincing evidence that his guilty pleas were not constitutionally entered. The Petitioner presented no medical testimony about the uses of Doxepin and what affect not having this medication would have upon him. Under these circumstances, we simply cannot conclude that the Petitioner has met his burden of proof in this regard. He is not, therefore, entitled to relief on this issue.

## III. Conclusion

After a thorough review of the record and the applicable authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE